Voigt v. Anglo-American Provision Co.

---

**Maria Voigt, Adm'x, v. Anglo-American Provision Co.**

<span style="float:right">104    423<br>a202s 462</span>

1. PRACTICE—*When Objections to Special Findings Come Too Late.*—The assignment that the verdict is against the evidence applies to the general verdict of not guilty; it does not include the special findings; they must be objected to in the trial court.

2. SAME—*Waiver of Objection to Action of Trial Court.*—Where there is neither objection nor exception taken to the alleged error of the trial judge in admitting evidence, and such action is not complained of in the motion for a new trial, it will be considered as waived.

Trespass on the Case.—Death by negligent act. Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard

in this court at the March term, 1902.  Affirmed.  Opinion filed December 11, 1902.  Rehearing denied December 24, 1902.

This was an action for negligence in causing the death of plaintiff's intestate.

The first count set up that the defendant, a packer of meats, was possessed of a lofty coal conveyor, upon the top· of which certain tinners, servants of the defendant, not fellow-servants of the deceased, were engaged in removing certain planks; that deceased was in the employ of the defendant as a carpenter and engaged at work near the conveyor and exposed to great danger.if any heavy object were dropped by said tinners; yet nevertheless, the tinners "carelessly and negligently dropped a certain plank from the said conveyor upon said deceased" while he was at work with due care, etc.

The second count is that the defendant carelessly suffered a plank to be dropped by one of its servants from the top of the conveyor down upon said deceased " without any proper or reasonably sufficient warning thereof," etc.

There was a general verdict of not guilty and the following special findings:

" 1.  Do you find from the evidence that the deceased was killed as the result of a pure accident, without negligence on the part of the defendant ?  Answer.  No.

2.  Do you find from the evidence that the danger of being struck by falling timbers, as upon the occasion in question, was one of the ordinary risks or dangers of George Voigt's employment ?  Answer.  No.

3.  Do you find from the evidence that the tinners' helpers in question were, at the time of the accident, exercising ordinary care for the safety of others ?  Answer.  Yes.

4.  Do you find from the evidence that George Voigt and the tinners' helpers were fellow-servants ?  Answer. Yes.

5.  Do you find from the evidence that George Voigt, deceased, was killed as a result of voluntarily rushing into a place of known danger for the purpose of saving his saw ? Answer.  Yes.

Do you find from the evidence that George Voigt, deceased, came to his death by reason of any negligence on his part?  Answer.  Yes."

From the judgment entered herein the plaintiff prosecutes this writ of error.

The defendant is a packer of meats. A part of its plant is a coal conveyor about 150 feet long and 30 inches wide at the top, supported some forty feet above the ground by timbers. The side of one of the buildings and the conveyor form a V-shaped angle twelve feet wide at the mouth. The defendant for years has constantly kept a force of tinners and of carpenters, each in charge of its own foreman, engaged in building and repairing. The deceased had worked there in the carpenter gang for two years next prior to his death. In the performance of their various duties some of the tinners and some of the carpenters worked together. This was of almost daily occurrence. In this joint employment the deceased had done his part. The respective shops of these two bodies of workmen were ten or twelve feet apart. August 13, 1900, about 4 o'clock P. M., Didszuhn and Bridgman, tinners, old employes of the defendant, were directed by their foreman to go up on the conveyor and pull off three pieces of timber. They went up to do this work. Any person standing below could have seen them by looking up. They pried off one timber, and before it fell called " Look out below." They then loosened another timber, and were shaking it with their hands to dislodge it, when it suddenly came loose and went down. They did not throw it down intentionally. This is the timber which, upon the rebound, struck and killed the deceased. At about the same time these two tinners were ordered on the conveyor, the foreman of the carpenters ordered the deceased, Graham and McAvoy, to get some 4 x 4's and to erect a platform on the top of the conveyor. These carpenters brought the timbers ordered and set them up against the wall of the building near the mouth of the V-shaped place. Deceased and Graham then stood in this V while McAvoy went for a rope with which to hoist the timbers. Deceased had left his saw lying on a foundation stone near the foot of the conveyor. The evidence tends to show that they stood against the wall of the building, about

eight feet from the bottom of the conveyor, for at least five minutes, awaiting the return of McAvoy; that the tinners called "Look out," and deceased replied, "Hold it," and ran in the direction of his saw and then toward the wall. The falling timber struck upon a stone and rebounded, hitting deceased on the left side of the head.

FRANCIS J. WOOLLEY, attorney for plaintiff in error.

JAMES C. McSHANE, attorney for defendant in error.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

In the written motion for a new trial none of the special findings are objected to as contrary to the evidence or as not supported by the evidence. The assignment that the verdict is against the weight of the evidence applies to the general verdict of not guilty. It does not include the special findings. It is too late to object to them for the first time in this court. They stand here as fully sustained by the evidence. Avery v. Moore, 133 Ill. 74; Penn. Coal Co. v. Kelly, 156 Ill. 15; Empire M. Co. v. Brady, 164 Ill. 61.

Hence it must be held that the deceased came to his death by reason of his own negligence; that he was killed as a result of voluntarily rushing into a place of known danger for the purpose of saving his saw; that the tinners who caused the timber to fall, at the time of the accident, were exercising ordinary care for the safety of others; and that the deceased and said tinners were fellow-servants.

But if these special findings had been specifically objected to in the motion for new trial, the legal effect of them would be unchanged. There is evidence in the record tending to support each of them, and the jury were justified by that evidence in finding as they did.

The deceased and Graham were not ordered to stand in this angle while they waited the return of McAvoy. They chose this spot voluntarily, and thereby took upon themselves the risk of any known danger and of any danger they might have known by the exercise of reasonable care.

Voigt v. Anglo-American Provision Co.

The two tinners were but forty feet above them, working on a surface only thirty inches wide, and thus necessarily in plain view of any one below who should look up. The jury could reasonably infer that in the five minutes deceased and Graham stood there they became aware of the presence of the tinners and knew or could easily have known what they were doing.

With these questions thus settled, it is immaterial that the jury found that the deceased was not killed as the result of a pure accident without negligence upon the part of the defendant, and that his death was not occasioned by one of the ordinary risks or dangers of his employment. Neither of these findings is repugnant to the general verdict.

The plaintiff complains of certain instructions which were given upon the request of the defendant.

The ninth and eleventh instructions, if they are bad for the reason that they single out certain portions of the evidence, are not grounds for a reversal, because under the special finding that the deceased and the two tinners were fellow-servants and the general verdict of not guilty, the question of the care or the want of care of the deceased for his personal safety, for the purposes of this decision becomes immaterial.

The thirteenth instruction, in regard to fellow-servants, includes all the tinners and all the carpenters; and therefore includes the deceased and the two tinners who threw down the timber.

The fifteenth instruction, relating to the testimony of employes "of either party," when the plaintiff had called no employes, might have been drawn to include the employes of the defendant only, and yet be good.

The stenographer called by defendant testified at length as to what the witness Graham swore to before the coroner, refreshing her memory by reference to a copy of the same, written out by her. This copy was then offered in evidence, and admitted without objection by plaintiff's counsel, because, as he says, he did not hear the offer. When

the jury were about to retire plaintiff's counsel objected to that paper going to the jury, on the ground that it was not in evidence. The court stated that it was received in evidence at the time it was offered. Counsel then moved to strike it out of the record. The court overruled the motion and counsel excepted to the ruling.

The motion for new trial does not assign the action of the court in refusing to strike this paper from the files as a ground for a new trial. It is not covered by number four, relating to the admission of improper evidence. To its admission there was neither objection nor exception. By not complaining of this alleged error in the motion for a new trial, plaintiff waived it. Clause v. Bullock Printing P. Co., 20 Ill. App. 113, 116; Dallemand v. Saalfeldt, 73 Ill. App. 151, 153.

Upon the whole evidence we are satisfied that justice has been done in this case, and we therefore affirm the judgment of the Superior Court.